NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:08-CV-267-KKC

STEVEN M. RENNICK, SR.                                                            PETITIONER

VS:                    **MEMORANDUM OPINION AND ORDER**

STEPHEN M. DEWALT, *Warden*                                        RESPONDENT

      Petitioner Steven M. Rennick, Sr., is in the custody of the Federal Bureau of Prisons ("BOP"). He is confined in the Federal Medical Center located in Lexington, Kentucky ("FMC-Lexington). Rennick has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241[Record No. 2] and has paid the $5.00 filing fee [Record No. 4]. Rennick has also filed a "Motion for Temporary Restraining Order" [Record No. 2-2] in which he seeks expedited review of the petition.

      This matter is before the Court for screening. 28 U.S.C. §2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002). During screening, the allegations in the petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).

      As Rennick is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Under 28 U.S.C. § 1915(e)(2), if a district court determines that the petition fails to establish adequate grounds for relief, it may dismiss the petition or make such disposition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

CLAIMS

Rennick seeks an Order directing the Bureau of Prisons ("BOP") to place him in a Community Corrections Center ("CCC") immediately.[1] Rennick alleges that FMC-Lexington Warden Stephen Dewalt, the respondent, has violated his due process rights under the Fifth Amendment of the United States Constitution. Rennick asserts that he should have been transferred to a CCC on June 19, 2008.

ALLEGATIONS OF THE PETITION

On September 17, 2004, Rennick was sentenced to a 57- month term of imprisonment in federal court in Ohio.[2] Rennick asserts that during his confinement at FMC-Lexington, he rendered substantial, undercover assistance to the BOP and the Federal Bureau of Investigations ("FBI") concerning alleged illegal contraband and smuggling activities at FMC-Lexington.

Rennick claims that in exchange for his undercover assistance, the BOP promised to reinstate 13-14 days of good time credit ("GTC") which he had previously forfeited because of disciplinary infractions. Rennick further alleges that the BOP agents agreed to allow him to begin service of the last ten-percent of his sentence on June 19, 2008.

According to Rennick, " . . . substantial amounts of money were being moved for and in consideration of the illegal contraband." [Record No. 2-3, p. 2]. Rennick alleges that he had meetings with Special Investigations Services ("SIS") Officer James Buckner, SIS Officer

---

[1] CCC's are also known as "halfway houses." Prisoners near the end of their sentences are often placed there to live and work under supervision as a part of preparing them to transition back into the community.

[2] On November 6, 2002, Rennick was indicted in the United States District Court for the Southern District of Ohio, Cincinnati ("the trial court"), for various drug offenses.' On March 5, 2003, a superseding indictment against the plaintiff was filed in the trial court. On August 19, 2003, the plaintiff pleaded guilty to violating 21 U.S.C. $846, Conspiracy to Distribute Marijuana. He received a sixty-three- (63) month sentence, plus a four-year term of supervised release.

Henderson and FBI Agent Dave Potts, wherein he agreed to inform federal officials about the contraband smuggling activities at the prison. He further alleges that his (Rennick's) sister, Joan Childress, also met with FBI Agent Henderson at a Cracker Barrell Restaurant in Dry Ridge, Kentucky "where more evidence was provided concerning the trafficking of contraband into the prison."[*Id.*, pp. 2-3].

In his various filings, Rennick claims that when he and his sister began assisting the prison, SIS Agents Buckner and Henderson promised to reinstate him with 13-14 days of forfeited GTC **and** to order his release to a CCC on June 19, 2008 [Rennick Affidavit, Record No. 2-3, p. 3, ¶¶ 12-13].

According to Rennick, his Unit Team at FMC-Lexington now denies any knowledge of his alleged undercover activities, although Rennick did not attach the Unit Team's written denial on the issue. Rennick states that the Unit Team informs him that he will not be released to a CCC until August 5, 2008 [*Id.*, ¶ 16].

Rennick seeks *nunc pro tunc* release to a CCC and argues that he should be able to serve a full ten-percent of his sentence (5.7 months) in CCC placement. He bases his claim on the fact that he has rendered substantial assistance to the BOP; that SIS Agents Buckner and Henderson promised him the June 19, 2008 release date; and that he needs "to be in a position where I can assist my son in the family trucking business and can contribute income to my families lifestyle and support." [*Id.*, ¶ 18].

Rennick acknowledges that he has not completed the three-step BOP administrative remedy process. He claims that the process would be futile. He asserts that he should be excused from pursuing the exhaustion process set forth in 28 C.F.R. § 542.13-15.

3

DISCUSSION

Prisoners who seek relief under 28 U.S.C. §2241 are ordinarily required to exhaust administrative remedies before filing a habeas action in district court. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir.1981) (per curiam); *United States v. Cobleigh*, 75 F.3d 242, 251 (6th Cir.1996)); *Sesi v. United States Bureau of Prisons*, 238 F.3d 423, 2000 WL 1827950 (6th Cir.(Mich.) December 7, 2000) (Table) (Unpublished Deposition) (a federal prisoner must first exhaust his available administrative remedies before filing a §2241 petition); *United States v. Oglesby*, 52 Fed. Appx. 712, 714, 2002 WL 31770320 *2 (6th Cir.2002) (citing *United States v. Wilson*, 503 U.S. 329, 335 (1992)).

The issue of whether to require exhaustion in a §2241 habeas proceeding such as this is not within the scope of the Antiterrorism and Effective Death Penalty Act ("AEDPA") or the Prisoner Litigation Reform Act ("PLRA"). Nor did the Supreme Court hold that failure to exhaust was not a violation of the PLRA, in *Jones v. Bock*, 27 S.Ct. 910, 920-21 (2007). Rather, exhaustion is a judicially created requirement for §2241 petitions, and the Court may waive the requirement if it finds that exhaustion is futile. *See Davis v. Keohane*, 835 F.2d 1147 (6th Cir. 1987); *Manakee Professional Medical Transfer Service, Inc. v. Shalala*, 71 F.3d 574 (6th Cir. 1995). Resort to administrative remedies is only futile if there has been "a prior indication from the agency that it does not have jurisdiction over the matter or it has evidenced a strong position on the issue together with an unwillingness to reconsider." *James v. United States Dept. of Health and Human Services*, 824 F.2d 1132, 1139 (D.C. Cir. 1987).

The administrative remedies for federal prisoners bringing a 28 U.S.C. §2241 petition are set forth in 28 C.F.R. §§542.10-16. Section 542.13(a) demands that an inmate first informally present his complaint to the staff (BP-8 form) before filing a formal request for an administrative

remedy. If the inmate cannot informally resolve his complaint with staff, then he may submit the formal written complaint (BP-9) to the warden. An inmate who is not satisfied with the warden's response may submit an appeal (BP-10) to the appropriate regional director within 20 calendar days of the date the warden signed the response; and finally, if dissatisfied with the response of the regional director, then he may submit an appeal (BP-11) to the office of the BOP's General Counsel.

The BOP's response times are established in 28 C.F.R. §542.18, which provides that once the inmate has filed the proper form, "response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days." *Id*.

Rennick filed this § 2241 petition on June 12, 2008, which was one week prior to the June 19, 2008 date on which he sought transfer to the CCC. Rennick seeks to totally short-circuit the BOP exhaustion process in this action, alleging that he is entitled to emergency relief because June 19, 2008 was imminent when he filed this action and he did not believe he should have to wait for the administrative exhaustion process to run its course.[3]

Rennick does not state when the Unit Team denied his request for CCC placement commencing on June 19, 2008. That decision might have been made months ago, or as recently as only a few days prior to the filing of this action on June 12, 2008. The Court can only speculate as to when Rennick first learned that he would not be going to a CCC until August 5, 2008, which is now less than a month away.[4]

---

[3] Rennick notes that even if the 13-14 forfeited GTC days were not restored to him (as was promised by SIS Agents Buckner and Henderson), he would have been eligible to be transferred to a CCC on July 2, 2008 [Record No. 2-3, p.4, ¶ 22].

[4] Consideration of this matter was briefly delayed until June 30, 3008, the date on which Rennick paid the $5.00 fee [Record No. 4] ordered on June 23, 2008 [Record No. 3].

If the Unit Team decision was in fact made months ago, then Rennick could have easily availed himself of the three-step BOP administrative remedy process (filing a BP-9 with the Warden; filing a BP-10 appeal with the BOP Mid-Atlantic Regional Office; and filing a BP-11 appeal with the BOP Central Office). Instead, he voluntarily ignored the exhaustion process, filed a § 2241 action, and claims that his undercover assistance and family circumstances excuse him from the process.

If the decision was not made until early June, 2008, just prior to the filing of this action, Rennick could have availed himself of 28 C.F.R. § 542.18, whereby a prisoner can file a complaint or request if the topic is "of an emergency nature which threatens the inmate's immediate health or welfare,"citing to 28 C.F.R. § 542.18.[5]

Accordingly, the Court is not inclined to grant the motion for expedited review. One of the reasons for requiring the exhaustion of administrative remedies is to prepare a record for the Court. *See Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980). Here, Rennick claims that BOP representatives made express, verbal promises concerning the date of his transfer to a CCC. The record is factually incomplete, a situation which could have been remedied if

---

[5] The Court notes that there is another specific procedure by which a prisoner can file a complaint or request if the topic concerns a "sensitive" matter. *See* 28 C.F.R. § 542.14(d), which provides as follows:

> (d) Exceptions to initial filing at institution–
>
> (1) Sensitive issues. **If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution.** If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

28 C.F.R. § 542.14 (Emphasis Added).

Rennick had first exhausted the BOP administrative remedy process. For that reason, the Court will dismiss the instant § 2241 petition without prejudice.

EVALUATION OF MOTION FOR TEMPORARY
RESTRAINING ORDER

Rennick claims that he will suffer irreparable injury if this cause is not taken up now, rather than later. The Court construes his request as one for preliminary injunctive relief and finds that such relief is not warranted.

The four factors to be considered before granting a preliminary injunction are: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiffs could suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Golden v. Kelsey-Hayes Company*, 73 F.3d 648, 653 (6th Cir. 1996) (citing *Performance Unlimited v. Questar Publishers*, 52 F.3d 1373, 1381 (6th Cir. 1995) (citing *International Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir.), *cert. denied*, 502 U.S. 813 (1991) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

Considering the first factor in relation to this case - - Rennick' likelihood of success on the merits - - the outcome is highly questionable at this stage for three reasons. First, as noted, the record is incomplete absent evaluation of the CCC placement issue by the FMC-Lexington Warden, the BOP Mid-Atlantic Office and the BOP Central Office.

Second, Congress has vested the BOP "with the right to exercise complete and absolute discretion in matters relating to the incarceration and classification of lawfully convicted prisoner," 18 U.S.C. §3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); and *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986). There is no constitutional or inherent right of a convicted person to be released

before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S. Ct. 2100 (1979).

The general rule is that the Due Process Clause of the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. *Moody v. Daggett*, 429 U.S. at 88; *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543 (1976). Inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." *Hewitt v. Helms, 459 U.S. 460 at 468, (1983).*

In short, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison (such as a CCC), security classification, or housing assignment. *See Olim v. Wakinekona*, 461 U.S. 238, 245, 103 S.Ct. 1741 (1983); *Meachum v. Fano*, 427 U.S. 215, 225, (1976); *Montanye v. Haymes*, 427 U.S. at 242; *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976)*; Bolger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.(Tex.) 1995). Accordingly, the petitioner simply has no due process right, protected by the Fifth Amendment, to be placed in a CCC earlier than earlier than the date on which the BOP assigns him.

Third, there is a federal statute, 18 U.S.C. § 3621(b), which governs the *place* of federal inmates' imprisonment. Summarized, this statute sets forth the criteria which the BOP must consider in making a determination as to where an inmate will serve his federal sentence. Section 3621(b) provides as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or

otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

    (1) the resources of the facility contemplated;

    (2) the nature and circumstances of the offense;

    (3) the history and characteristics of the prisoner;

    (4) any statement by the court that imposed the sentence--

        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

        (B) recommending a type of penal or correctional facility as appropriate; and

    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

As noted, in this case, the issue of earlier CCC placement has not been fully exhausted. Rennick has not even provided the Court with a copy of the Unit Team's response to his BP-8 "Request for Administrative Remedy." It appears that the Warden was not given an opportunity to consider the factors set forth in § 3624(c). It is obvious that the two higher BOP levels have not addressed the issue. For that reason, the Court will not at this time counter the BOP's decision to defer Rennick's transfer to a CCC until August 5, 2008.

Additionally, pre-release custody is governed by 18 U.S.C. § 3624(c), which provides as follows:

(c) Prerelease custody. - -

(1) In general.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c).[6]

In *Wedelstedt v. Wiley*, 477 F.3d 1160 (10th Cir. 2007), the Tenth Circuit addressed a similar claim by a federal inmate who demanded placement in a CCC earlier than the date set by the BOP. There, the court examined the earlier version of § 3624(c) and concluded that Wedelstedt's remedy was limited only to the BOP being required to *consider* him for a transfer to a CCC for the last ten percent of his sentence. *Wedelstedt*, 477 F. 3d at 1168. The relevant language from the *Wedelstadt* opinion reads as follows:

> In determining whether Wedelstedt should be transferred, the BOP must consider the factors set forth in 18 U.S.C. §3621(b) without regard to the invalid regulations. **This court, however, takes no position on whether Wedelstedt should be transferred and, as Wedelstedt himself acknowledges, he has no entitlement to such a transfer.** .

*Id*. S*ee also Elwood v. Jeter*, 386 F.3d 842, 846-47 (8th Cir. 2004) (although the BOP has the *authority* to place a prisoner in an RRC or a CCC for more than the final 10% of his sentence, the BOP is not *required* to do so).[7]

---

[6] The legislative history of this provision reveals that the 2008 Amendments to this subsection are found in Pub. L. 110-199, § 251(a). That section was enacted on April 9, 2008, and is referred to as the "Second Chance Act of 2007." That legislation rewrote subsection (c) of § 3624, which formerly read as follows:

> "(c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.".

18 U.S.C.A. § 3624.

[7] *Elwood* states as follows:

It [18 U.S.C. § 3624(c)] only obligates the BOP to facilitate the prisoner's transition from the prison system. Under § 3621(b), the BOP **may** place a prisoner in a CCC for six months, or more. Under § 3624(c)) the BOP must formulate a plan of pre-release conditions. This plan **may** include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the prisoner's re-entry into the community. **Likewise, the obligation is qualified by the phrase "to the extent practicable."** Security concerns or space limitations in a CCC near the prisoner's home are among the factors that may make it impractical to transfer a prisoner

As to factor (2), Rennick has alleged irreparable injury because of financial hardship on his family business. Incarceration causes adverse financial consequences on the family of the convicted person. While that outcome is regrettable, the fact remains that Rennick was sentenced to a serve a 57-month term. As noted, Rennick has no constitutional right to serve his sentence in a facility more to his choosing for any certain amount of time. *See Ogunyale v. Phillips*, 2008 WL 1820652 (N. D. W. Va., April 22, 2008) (Slip Copy) (prisoner is not entitled to a specific amount of time in a halfway house; rather, a prisoner is entitled only to have the BOP consider his application for CCC placement in accordance with the five factors set forth in § 3621(b)).

The Court finds that denying Petitioner Rennick the emergency relief he requests now will not result in *irreparable injury*, which is the legal standard. As noted, August 5, 2008 is less than a month away. Finally, as to factors (3) and (4), the courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987); and *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). The Court is not convinced that the public interest would be served by interfering with the BOP's discretion in selecting where this prisoner will spend the rest of his federal sentence and for how long he will be at any location.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) Petitioner Steven M. Rennick's "Motion for Temporary Restraining Order" [Record No. 2-2] is **DENIED**.

(2) Steven M. Rennick's petition for writ of habeas corpus [Record No. 2] is **DENIED** and this action will be **DISMISSED** without prejudice from the docket of the Court.

---

to a CCC for all or even part of the transition period.
*Elwood v. Jeter*, 386 F.3d at 846.

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the named respondent.

Dated this 9th day of July, 2008.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge